# Big Black Creek Improvement Co. *v.* Mahlon S. Kemmerer, Appellant.

*Contract—Coal lease—Rent.*

By an instrument in writing defendant's assignor covenanted to pay a certain sum each year in the nature of rent for coal leased to him. It was provided, however, that if the lessee could not produce, from causes

beyond his control, the quantity of coal required at a certain rate to produce the total amount of rent. he should be exonerated from the payment of rent on all coal other than the quantity actually mined during the year. The instrument also provided for a sale to the lessee of certain buildings and fixtures for a sum specified. The lessee further covenanted to pay the lessor "as and by way of rent in each and every month the sum of two hundred dollars for the use of the miners' houses." Defendant took an assignment of the lease and agreed to perform all its covenants. Subsequently the lessor conveyed his reversion to another person. The evidence showed that for several years the mine was flooded and that defendant was prevented from mining by causes beyond his control. *Held,* that defendant was bound to pay plaintiff, the original lessor, the value of the buildings and fixtures, and also the rent of the houses during the continuance of the term.

In the above case the covenants to mine and pay rent for houses were not dependent upon each other, and the only exemption from liability was for coal not actually mined for causes beyond the control of the lessee.

Argued March 19, 1894.    Appeal, No. 174, July T., 1893, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1892, No. 647, on verdict for plaintiff.    Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.    Affirmed.

Assumpsit on instrument in writing.

At the trial, before WILLSON, J., the following instrument, dated June 1, 1878, was given in evidence:

"The parties of the first part [plaintiffs] do demise and let to the party of the second part [Thomas S. McNair], his executors and administrators, for a term ending at noon on the thirty-first day of December, A. D. 1888, the premises situate on Big Black Creek, in Hazleton Township, Luzerne County, Pennsylvania, to wit, all that part of the tract of land situate as aforesaid, surveyed in the name of Matthew Eggert, that lies to the eastward of Wilkesbarre Road, and the veins of coal extending from that tract in the land of the parties of the first part lying to the west of the said road where the work is extended from the veins on the east side into those lying on the west side of the said road, reserving to the parties of the first part the surface of the land lying west of the said road, and the party of the second part shall be at liberty to cut such timber on the premises hereby demised as may be required and used by him for mining purposes.

" And the parties of the first part do further sell and transfer to the party of the second part the buildings and fixtures in the schedule annexed mentioned, saving and excepting miners' houses, store-house, stable, and all other wooden structures, for the sum of six thousand dollars, payable with interest at the rate of six per cent per annum from the date hereof in installments, so that the whole sum of six thousand dollars, with interest as aforesaid, shall be wholly paid on or before the first day of January, A. D. 1883, provided, if so demanded by the said parties of the first part, the said sum of six thousand dollars or so much thereof as remains unpaid, with interest as aforesaid, shall become presently due and payable.

" In consideration whereof, the party of the second part covenants to and with the parties of the first part as follows : That he will not assign or underlet the demised premises, or any part thereof, without the consent of the parties of the first part under their corporate seal, and at the termination of the term will deliver up the premises demised, with the buildings, machinery, and fixtures thereon, in good order and repair, ordinary wear and tear only excepted, the parties of the first part covenanting to put the miners' houses in good tenantable order within three months from the date of this indenture ; and the party of the second part further covenants to pay to the parties of the first part as and by way of rent, in each and every month, the sum of two hundred dollars for the use of the miners' houses and the store-house erected on the premises hereby demised, and to work the slope now open with due diligence, and to open a new slope on the demised premises, to extend to and reach a lower vein than that now reached by the slope already constructed, and at his own cost and charges to put up all machinery and appurtenances required for a colliery capable of producing forty thousand tons of coal annually, and to complete the same so that there shall be erected on the premises, in complete order, a colliery capable of producing from the demised premises at least forty thousand tons of coal in each year thereafter, beginning on the first day of January, A. D. 1879, provided if the party of the second part elect he may erect, on any part of the property hereby demised lying east of the said road, one or more collieries and work the same upon the same terms and conditions as are therein expressed.

" And that he will, in each and every year after the first day of January, A. D. 1879, mine and send to market at least forty thousand tons of coal from the demised premises, and that he will pay to the parties of the first part, in each and every year, a rent of fourteen thousand dollars, whether the amount of coal required to produce that under the covenant hereinafter contained shall have been mined or not; provided, that if the party of the second part cannot produce, from causes beyond his control, the quantity of coal required to produce the sum of fourteen thousand dollars under the stipulation hereinafter contained, in respect of rent or royalties on the coal mined, he shall be exonerated from the payment of rent on all coal other than the quantity actually mined during the year [with provisions as to price of coal, etc.].

" And the party of the second part further covenants to pay all taxes or assessments of every kind, whether township, county, state, or national, that are or may, during the continuance of this lease, be assessed or levied upon the land or premises demised, or the improvements thereon erected, or on the coal mined, or upon the lessors or their franchise, by reason of or depending for that amount upon the quantity of coal mined upon the said premises.

" And the party of the second part further covenants that he will cause all slopes now on the property or hereafter to be constructed, except the slope called No. 3, to be driven to the bottom of the basin when practicable, and that he will put up and maintain ample contrivances and machinery for draining the surface and other water of the mines, and will at all times keep the same properly drained and free from water, provided that the party of the second part shall not be required to pump or keep free from water any part of the present Harleigh Colliery except while mining coal therefrom.

" And it is mutually covenanted that upon the termination of this term by efflux of time or otherwise, the lessors or their assigns shall have the right to the use of any machinery upon the premises requisite for pumping the mines, or otherwise preserving them from damage, for the space of sixty days. free of expense, and that within thirty days after the said determination of the term there shall be a valuation by three competent and disinterested persons, one to be appointed by the

lessor and the other by the lessee, and an umpire to be selected by the two, who shall appraise the personal property belonging to the lessee upon the premises or used for working the same; and also all buildings, machinery, and fixtures belonging to him or which he has erected thereon, other than such buildings as may be erected in the place of those belonging to the lessors and have been destroyed, which appraisal shall be furnished in writing to the parties of the first part within thirty days from the said termination of said lease. Upon failure of the other party to name an appraiser, or, if named, on his failure to attend at the time and place appointed to make the appraisement, the other appraiser may proceed and appraise the property as the nominee of both parties, and the parties of the first part shall be entitled to take any or all of such property, buildings, machinery, and fixtures at the price fixed by such appraisement, of which they shall notify the lessee within ten days from the date of the receipt of such appraisement, and the lessees shall be entitled to remove the residue of the personal property, buildings, fixtures, and machinery not required for use. for sixty days as aforesaid by the lessors within thirty days from such notice, and the residue within thirty days thereafter; and all property not thus appraised and removed shall become, or be deemed to be, the property of the lessors.

"And the party of the second part further covenants to maintain and keep in good repair at all times during the said term all buildings, machinery, and fixtures which are now or may at any time be erected or placed upon or in the demised premises in his possession or occupancy, except breakers Nos. 1 and 3, if the same are abandoned by the party of the second part during the term, and from time to time to insure and keep insured the said property, with clauses requiring the loss to be paid to the parties of the first part, to be applied in rebuilding or replacing the property destroyed or damaged by fire."

"Schedule of buildings and fixtures which are on the demised premises at the date of this indenture: Miners' houses, store-houses, stables and appurtenances, two breakers, saw-mill.

"The following are sold to the lessee by the annexed indenture: The machinery in the breakers, railway tracks connected

with the breakers now standing and in the mines, all boilers, pumps, columns and steam pipes, saw-mill, mine cars."

By an agreement in writing of July 27, 1883, McNair was released, and M. S. Kemmerer and Wm. Powell assumed the obligations of McNair under the instrument of June 1, 1878. This instrument acknowledged "the debt of $6,000 therein mentioned as the price of certain buildings and fixtures thereby sold to said Thomas S. McNair is due and payable, with interest from the day of the date of the said indenture of lease, and that the monthly rent from miners' houses, etc., reserved by the said lease is $200."

By agreement of Jan. 12, 1885, Powell assigned his interest in said lease to Kemmerer, and by agreement of April 30, 1886, plaintiff of the one part, and Kemmerer and Powell of the other part, extended the term of the lease from June 1, 1888, to June 1, 1900, and released Powell, and accepted Kemmerer as the party liable as lessee of the demised premises, with the same effect as if he had been originally named in place of Mr. McNair.

Defendant gave evidence to prove that there were floods during the months of December, 1885, and January, 1886; and that the result was that said mines were injured to such an extent, and so much water turned into them from the creek as to render it impossible for defendant to remove the water from them by any machinery then on the ground or that could be put into the mines of the Harleigh Colliery, and that by reason thereof it was rendered impossible to remove any coal from the demised premises.

Defendant also gave evidence to prove that after the first of these floods, and after work had been stopped by the mine inspector, plaintiff, through its superintendent and agents, came upon the ground and agreed that the only way the mines could be preserved was by a change of the creek channel around the outcrop upon the veins at Harleigh Colliery, and that an arrangement was entered into by which defendant agreed to pump a portion of the water from Old Harleigh mine, which he was not compelled to do under his lease, and the landlord of the plaintiff in this case, with other mine owners, agreed to construct a new channel or canal from the creek around the outcrop in such a manner as to preserve the mines from any

future flood; that this was so defectively done, and that there was such negligence, not only in the construction, but that it was delayed to such a length of time in being completed, according to the understanding between the parties, that subsequent and heavier floods came, passing over the demised premises and partially destroying the work done, resulting in the permanent and entire destruction of the mine, and making it impossible for the water to be taken out from them by any machinery that could have been put there by the ordinary operation of mining in that region.

Upon the lease plaintiff brought this action against defendant: (1) For the sum of $14,000 a year for rent for the years 1886, 1887, 1888 and 1889, less a certain small credit, which claim however was at the trial confined to the years ending December 31, 1886, 1887 and 1888. (2) For the sum of $6,000 for breaker and improvements, with interest from June 1, 1878. (3) For the sum of $200 a month for the miners' houses, etc., for forty-six months. (4) There were also other claims for damages for failing to keep the mine properly drained, digging canal defectively, etc.

It further appeared that plaintiff company, by deed not printed in the paper-books, dated Dec. 31, 1889, conveyed to G. B. Markle et al., trading under the firm name of G. B. Markle & Co., for the consideration of $150,000, all that certain tract or piece of land therein bounded and described and being that part of the demised premises lying east of the Wilkesbarre road whereon the collieries were situate.

There was also a contemporaneous agreement between the same parties, as follows:

" Whereas, by indenture bearing date the first day of June, 1878, the party of the first part demised certain premises therein described to Thomas S. McNair, with the privilege of mining coal therein for a term of years, which has been extended to the first day of June, 1900, yielding rent as therein stated, and which premises thus demised are situated in the county of Luzerne, upon both sides of the road leading from Hazleton to Wilkesbarre.

" And whereas, by indenture of even date herewith the party of the first part (the Improvement Co.) granted and conveyed to the parties of the second part (G. B. Markle &

Co.), their heirs and assigns, all its lands and tenements lying
to the eastward of said road, intending thereby to convey to
them all its rights and remedies under the above recited lease
(now vested in Mahlon S. Kemmerer as lessee), and in and to
so much of the demised premises as is situate to the eastward
of the Wilkesbarre road.

"And whereas it has been agreed between them for divers
valuable considerations that the parties of the second part
should have, possess and enjoy all the rights and remedies
which it, the party of the first part, has in the said demised
premises, situate, lying, and being on the westwardly side of
the said Wilkesbarre road, as hereinafter limited, including
the right to the rents payable out of the same.

"Now this indenture witnesseth: That for the better secur-
ing to the parties of the second part, their heirs, executors,
administrators, and assigns, the estate of the party of the first
part in the demised premises lying to the westward of the
Wilkesbarre road during the term of the recited lease and one
day, as the same are herein described and granted, the party
of the first part has granted, leased, and demised, and by these
presents does grant, lease, and demise to the parties of the
second part, their heirs, executors, administrators, and assigns,
all the estate and property of the party of the first part situate,
lying, and being in the county of Luzerne and state of Penn-
sylvania, which are described in and demised by the recited
lease, and situate on the west side of the said road leading
from Wilkesbarre to Hazleton, in the same manner and to the
same extent, and subject to the same qualifications and restric-
tions as the same are granted and demised in and by the re-
cited lease, for a term of years ending on the second day of
June, A. D. 1900, at midnight, together with all the rights and
remedies of the party of the first part, and the rents, issues,
and profits of the granted premises, under and subject, never-
theless, to all the rights of the lessee of the demised premises
under the recited lease, his executors, administrators, and
assigns.

"Yielding and paying to the party of the first part during
the term one grain of wheat in each and every year as rent, if
demanded.

"And the parties of the second part, for themselves, their

heirs, executors, administrators and assigns, covenant with the party of the first part, its successors and assigns, that during the term hereby demised all taxes on the demised premises shall be paid by them, and that at the termination of the term they will deliver peaceable possession of the demised premises to the party of the first part, its successors and assigns, and the said premises shall then be free of all liens and charges by reason of anything done or suffered by them, the parties of the second part, their heirs, executors, administrators, and assigns, during the term.

" And the parties of the second part covenant with the party of the first part, its successors and assigns, that, in the event of the demised mines being drained and capable of being worked, and if they are in fact worked either by themselves, their tenant, or agent, all the covenants in the recited lease contained in respect to the mode of mining which are intended to operate for the protection of the interest of the lessors or reversioners shall be kept and performed."

The court instructed the jury to find for plaintiff for the value of the buildings and fixtures, and for the rent of the miners' houses, and for defendant as to claim for damages for failure to construct canal. [1–3]

Defendant's points were among others as follows :

" 1. Under the deed of Dec. 31, 1889, by the Big Black Creek Improvement Company to G. B. Markle & Co., and the agreement of the same date between the same parties, in evidence in this case, the plaintiff has assigned and conveyed all its rights under the lease now sued on to G. B. Markle & Co., including its right to the sums claimed in this suit, and therefore cannot maintain this action." Refused. [4]

" 2. That the deed of plaintiff to G. B. Markle & Co., of Dec. 31, 1889, conveyed all the coal under the land described in the deed, and the written agreement executed by the plaintiff and bearing the same date with the deed granted unto the same grantee all the coal in the demised premises lying east of the lands described in the same deed that might be mined under the Kemmerer lease up to the year 1900, for ten grains of wheat, or a rent of one grain of wheat per year, and thereby declared that the intention of the parties to the above deed was to convey all the rights and remedies and rents payable

under the Kemmerer lease to the said G. B. Markle & Co. The effect of this deed and the contemporaneous agreement was to convey all rents accrued and the right to sue for and recover the $6,000 mentioned in said lease for certain buildings and property, as well as the right to sue for and recover the minimum rents on unmined coal, and the verdict should be for the defendant." Refused. [5]

"11. If the jury find that in July, 1885, there was a large body of water accumulated in the 'present Harleigh Colliery' (so called in the lease), and that said body of water did endanger the lives of the miners working in the demised premises and in the Ebervale Colliery, and that James E. Roderick, mining inspector under the mining laws of Pennsylvania, notified the defendant to stop work in the demised premises until such body of water should be removed, inasmuch as under the terms of the lease the said defendant was not obliged to pump said body of water, said defendant was justified in ceasing to work the demised premises and was exonerated from the payment of royalty on all coal not actually mined by him after that date. *Answer:* As I understand it, the notice from the mine inspector was withdrawn and the working of the mine was resumed. It is, therefore, impossible for me to say to you with propriety, as it seems to me, that the defendant was relieved from responsibility because of that notice. If that notice had operated during the whole year, if the mines were closed during the whole year, or so much of the year as prevented the defendant from working out a sufficient amount of coal to have enabled him to pay the $14,000, then to that extent I should have said that the point was correct; but this is an absolute date which is intended to cover all subsequent time, and it is, therefore, too broad, in my judgment." [6]

"13. And if the jury find that the defendant agreed to pump the water from the 'present Harleigh Colliery' (so called in the lease), and made preparation therefor and complied therewith so far as was possible to do, and that the plaintiff company agreed to remove the Black Creek from its natural bed and transfer the same to another part of the demised premises, but so negligently prosecuted said work in respect to time and manner of construction, including the location, width, depth, and grade of the new channel, as that by reason thereof the

waters of the said creek, during the storms of December, 1885, and January, 1886, were not carried off, but, on the contrary, did overflow into and fill up the mine on the demised premises, and did prevent defendant from continuing to mine said demised premises, then the plaintiff is liable to the defendant for all damages caused him thereby, and the defendant is entitled to set off the same in this action against any sums otherwise due by him to the plaintiff under the instrument sued on." Refused. [7]

" 14. The measure of such damages is the value of the defendant's lease at the time of the final stoppage of work in 1886 ; that is to say, the difference in value between the royalty agreed to be paid thereunder and the value of the coal in place upon such number of tons as the defendant might reasonably be expected to mine and take out of said premises during the term." Refused. [8]

Verdict and judgment for plaintiff for $23,249.

*Errors assigned* were (1–8) instructions, quoting them.

*S. P. Wolverton* and *Silas W. Pettit, John R. Read* and *G. L. Halsey* with them, for appellant.—The instrument constituted a sale of the coal : Timlin v. Brown, 158 Pa. 606 ; Caldwell v. Fulton, 31 Pa. 475 ; Scranton v. Phillips, 94 Pa. 15 ; Sanderson v. Scranton, 105 Pa. 469 ; Railroad Co. v. Sanderson, 109 Pa. 583 ; Muhlenberg v. Henning, 116 Pa. 138; McCahan v. Wharton, 121 Pa. 424 ; Montooth v. Gamble, 123 Pa. 240 ; Lazarus's Estate, 6 Kulp, 333.

In Spencer v. Kunkle, 2 Grant, 406, there were two leases made at different times, though by the terms of the second lease it was made part and parcel of the first. The first was a lease of coal mines and the second of the miners' houses, and this court held that the two leases constituted but one entire demise.

Even treating the instrument as an ordinary lease, it would seem that under the circumstances all right to the arrears of rent passed to Markle & Co : Linton v. Hart, 25 Pa. 193 ; Reed v. Ward, 23 Pa. 144 ; Bank of Penna. v. Wise, 3 Watts, 394.

The verdict of the jury established the fact that defendant had been prevented from operating his mine by the act of God,

and if this be so, and if this be one contract, as it undoubtedly is, a demise of the mine and of the miners' houses as a necessary accessory to and for the purpose of operating the mine, he is relieved from the performance of his contract by the occurrence of the accident in question : Lovering v. Coal Co., 54 Pa. 291; R. R. v. Sulphur Springs, 96 Pa. 65; R. R. v. Anderson, 94 Pa. 351; Livezey v. Phila., 64 Pa. 106. .

Defendant was entitled to set off the damages suffered by him against plaintiff's claim.  His right to do so does not depend upon an agreement upon plaintiff's part nor upon a consideration therefor, though it is submitted both existed in this case : Steigleman v. Jeffries, 1 S. & R. 477; Gogel v. Jacoby, 5 S. & R. 117; McGrew v. Stone, 53 Pa. 436.

*R. C. McMurtrie,* for appellee, cited: Johnson v. Smith, 3 P. & W. 496; Biddle v. Ash, 1 Rawle, 78; Schuylkill v. Decker, 2 Watts, 343; Montooth v. Gamble, 123 Pa. 248; Lovering v. Coal Co., 54 Pa. 291.

Opinion by Mr. Justice Fell, July 11, 1894:

The plaintiff sued to recover: (1st) rent reserved by the lease of a colliery; (2nd) the price of a breaker and improvements; (3rd) the rent of miners' houses.  The first of these claims was not allowed by the jury for the reason that they found that the defendant was prevented from mining coal by causes beyond his control, and with that claim fell the many vexed questions which it involved.  As to the remaining claims, a peremptory instruction was given to find for the plaintiff, and unless there was error in this the judgment should be affirmed.  As to these claims, the liability which the plaintiff sought to enforce was for the price of a breaker and improvements sold by it to its lessee, and by him transferred to the defendant when the lease was assigned, and the payment of which the defendant assumed by covenant with the plaintiff; and his liability as assignee of a lease of dwelling houses for a fixed rent expressly assumed.

All liability as to these claims was denied on the ground that the conveyance of the reversion by the plaintiff carried with it to the grantee the right to recover for the breaker and improvements, and the right also, if any existed, to the rents of

the dwellings due at the time of the conveyance, and that the occurrence which excused the defendant from his covenant to mine relieved him from his obligation to pay rent for the miners' houses.

The conveyance of the land would not carry accrued rent or at all affect the price of buildings sold to a tenant in possession, and the obligation to pay rent rested upon agreements both expressed and implied. The exemption from liability claimed could arise only from the agreements, and we think they are open to no other construction than that given them by the learned judge before whom the case was tried. The covenants to mine and pay rent for houses were not made dependent upon each other, and the only exemption from liability is for coal not actually mined for causes beyond the control of the lessee. The exemption being expressed as to one should not be implied as to the other, unless there is between them a clearly necessary dependence.

The claim to set off damages for the failure of the plaintiff to construct a canal to divert the water which flooded the mine was properly denied. The plaintiff owed no duty to the defendant in the matter, either under the contract or independently of it, and it assumed no obligation to him in that regard.

The case was carefully and ably tried, and we see no just cause for complaint on the part of the defendant.

The judgment is affirmed.